## Hauss v. Surran.

(Decided February 24, 1916.)

### Appeal from Campbell Circuit Court.

1. Sales—Warranty—Duty to Return—Waiver of Breach.—Where a sale is executed and the provision of the contract with respect

to the return of the property by the buyer is not imperative but merely permits the buyer to return the property, he may, at his election, resort to that remedy, or he may retain the article and recoup his damages for the breach of the warranty in an action by the vendor for the price, in which event, his retention of the property does not constitute a waiver of the breach of warranty.

2. Pleading—Answer and Counter-claim—Breach of Warranty—Sufficiency.—Where, in an action for the recovery of the purchase price of an electric light plant, the defendant seeks, by counter-claim, to recover the amount paid on the purchase price on the ground that the plant failed to work, he is not entitled to recover unless he alleges a return, or offer to return, the property, where the property is not absolutely worthless. He may, however, retain the property and counter-claim for damages.

3. Trial—Instructions—Actions for Price of Machinery—Breach of Warranty—Counter-claim for Damages.—An instruction telling the jury to find for plaintiff the balance of the purchase price of an electric light plant, unless they believe that the engine, if kept in proper condition and properly operated, would not develop six horse power and sufficient to operate the plant successfully and continuously with 150 Tungsten lamps of 16 and 8 candle power and one arc lamp, is erroneous, for it authorizes a finding in favor of defendant even though the jury may believe that defendant's damages were less than the amount due plaintiff.

4. Trial—Instructions—Breach of Warranty—Measure of Damages.— In an action to recover the balance due on the purchase price of an electric light plant sold and installed by plaintiff, where defendant counter-claimed for damages for a breach of warranty, an instruction telling the jury to find for defendant as damages the difference between what they may believe from the evidence the plant as installed to have been reasonably worth and the amount paid threon by the defendant, to-wit, the sum of $200.00, is erroneous in assuming that the plant, if it did not comply with the warranty, was worth less than $200.00.

5. Damages—Breach of Warranty—Measure.—The measure of damages for a breach of warranty of an electric light plant is the difference between the value of the plant as warranted and its value as installed.

6. Trial—Instructions—Breach of Warranty—Counter-claim for Damages.—Where plaintiff sues to recover the purchase price of an electric light plant and defendant counter-claims for damages for a breach of warranty, proper instructions indicated.

JUDSON A. SHUEY and EDWARD C. LOVETT for appellant.

BARBOUR & BASSMANN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Albert F. Hauss, brought this suit against George Surran to recover the balance of the purchase price of a small electric light plant. Defendant counterclaimed for damages for breach of warranty. The jury found for defendant and judgment was entered accordingly. Plaintiff has moved for an appeal.

On May 7, 1914, plaintiff contracted with the defendant to install an electric light plant, consisting of machinery and appliances connected to 150 light outlets for Tungsten lamps and one G. E. arc light. The purchase price was $611.00, payable $200.00 when the machinery was shipped, $200.00 on June 15, 1914, and $211.00 on July 15, 1914. Under the contract, the machinery was to consist of one six horse-power ''Sandow'' kerosene engine mounted on skids, fully equipped with oil and water tanks and throttling governor, belted to a 4 kw. 115 volt, Robbins & Myers direct current generator, type ''I,'' connected to a slate switchboard by main wires, one voltmeter, voltage regulator and fused main dynamo switch.

The warranties of the manufacturers of the engine and generator were made a part of the contract between plaintiff and defendant. With respect to the generator, the warranty is as follows:

''It is guaranteed that the generator installed will be a 4 kilowatt at 115 volts and is capable of carrying 200 twenty watt (16 c. p.) Tungsten lamps at its rated voltage continuously without injurious heating.

''The company agrees to furnish all generators in good operative condition, free from all defects in labor and material, and agrees that they will deliver their rated output successfully, provided they are kept in proper condition and operated normally.

''The company agrees to correct at its own expense any defects in labor and material in its apparatus which may develop under normal and proper use within thirty days after said apparatus has been placed into service, provided the purchaser gives to the company immediate written notice of such defects. Responsibility for defects resulting from improper storage or handling, prior to placing the apparatus into service, will not be assumed by the company. Liability for consequential damages, due to failure to meet the conditions of this guarantee, will not be assumed by the company.''

With respect to the engine, the warranty is as follows:

"We guarantee that the engine will be entirely satisfactory to you, you to be the judge and jury. You will be allowed a 15 days' trial, dating from the time you receive the engine, and if, for any reason whatever, you do not feel entirely satisfied with the engine and wish your money back, every cent you have paid us for it will be refunded without question and without argument if you will write us for shipping instructions, which we will immediately furnish within the fifteen days.

"We guarantee every Sandow engine to be free from defect when shipped from our factory, and any part proven defective from this cause will be replaced without costs if the part to be replaced is returned to our factory for examination, transportation charges prepaid. This guarantee is effective for five years from date of sale.

"Furthermore, we guarantee that every Sandow engine has before shipment been tested under actual conditions to insure its satisfactory operation and power and that it has developed its rated horse-power on our stand test."

According to the evidence for plaintiff, the plant was installed at Phoenix Grove Park and tested, and gave perfect results. Shortly after the plant was installed, in answer to a complaint, he went to the plant and found that they had blown a fuse and that the lights had been short-circuited in one of the amusements tents. About a week after the plant was installed he put on a muffling device. One time in August he went up there to see how the plant was running and operated the plant for two hours. He was in the habit of calling up the plant over the telephone every Monday or Tuesday morning and inquiring how it was working, and always received the message that it was working nicely. The only two times he went to the plant in response to complaints were when the fuse was blown and when he took Mr. Pickett up there in the month of August.

Defendant and his witnesses testified that the plant from the very beginning failed to work properly or to give the necessary light. Plaintiff, in response to numerous complaints, came to the plant on several occasions and was unable to make it work properly. Notwithstanding the failure of the plant to work properly, defendant continued to operate it up to about the 25th day of·

August. There is further evidence to the effect that the engine in question was not a six horse-power engine and was not sufficient for 150 lights.

For the plaintiff it is insisted that if the defendant retained the machinery and failed to return, or offer to return it, within a reasonable time, he thereby waived the breach of warranty, and the court erred in failing to submit this phase of the case to the jury. In our opinion this principle is not applicable to the facts of this case. Here the contract was executed. Of course, where the condition is that the article sold shall be deemed to fulfill the warranty unless returned within a specified or reasonable time, and the buyer retains the goods after that time, he cannot avail himself of the breach unless requested by the seller to keep the machinery under the promise that he will make it operate in a satisfactory manner, or the seller, by his course of dealing, has induced the buyer to believe that he may keep the machinery without losing his right to return it within the time fixed. Dick v. James Clark, Jr. Electric Company, 161 Ky., 622, 171 S. W., 198; McCormick Harvesting Machine Company v. Arnold, 116 Ky., 508, 76 S. W., 323. But where the sale is executed and the provision of the contract is not imperative but merely permits the buyer to return the property, he may, at his election, resort to that remedy, or he may retain the article and recoup his damages for the breach of the warranty in an action by the vendor for the price. Shupe & Company v. Collender, 57 Conn., 489, 15 Atl., 405, 1 L. R. A., 339; Ellwood v. McDill, 105 Ia., 437, 75 N. W., 340; Cook v. Gray, 2 Bush, 121; Harrigan and White v. The Advance Thresher Company, 81 S. W., 261, 26 R., 317; Ruby Carriage Company v. Kremer, 81 S. W., 251, 26 R., 274. Unless the article is absolutely worthless for every purpose, the buyer cannot recover the price unless he returns the article or offers to return it. In the case under consideration, defendant not only warranted that the engine was a six horse-power engine, but that it had sufficient power to light 150 lights and one arc light. The additional warranties were those contained in catalogues of the manufacturers. It does not appear that there was any defect in the generator. The chief complaint is with respect to the power of the engine. The warranty of the manufacturer with respect to the engine merely permits the buyer to return it. It

does not provide that a failure to return shall constitute a waiver of the warranty. That being true, plaintiff's retention of the machinery did not constitute a waiver of the warranty.

Here the answer and counter-claim, after setting out the breach of warranty, asked for damages to plaintiff's business. To this portion of the answer and counter-claim a demurrer was sustained. The answer and counter-claim further alleges that the light plant was useless to the defendant and "that by reason of said failure of said electric light plant he lost the sum of two hundred ($200.00) dollars paid to the said plaintiff." The mere fact that the plant was useless to the defendant did not dispense with the necessity for his returning, or offering to return, the machinery, if he desired to rescind and recover the price. It is only where the plant is absolutely worthless and not merely worthless to the defendant that he may sue for the price without having returned or offered to return the plant.

We therefore conclude that the answer and counter-claim was not good on demurrer. On the return of the case defendant will be permitted to amend and set up his damages for the breach of the warranty.

The court instructed the jury as follows:

1. "The jury will find for the plaintiff in the sum of four hundred and eleven ($411.00) dollars with interest from July 15, 1914, unless they believe from the evidence that the engine installed at the place in question, if kept in proper condition and properly operated, would not develop six horse-power and sufficient to successfully and continuously operate the plant with 150 Tungsten lamps of 16 and 8 candle power as per contract, and one arc lamp—in which event they will find for the defendant.

2. "If the jury find for the defendant under instruction No. 1 and believe from the evidence that the engine in question was not sufficient to develop 6 H. P., etc., they shall find for the defendant as damages the difference between what they may believe from the evidence the plant as installed to have been reasonably worth, and the amount paid thereon by defendant, to-wit, the sum of $200.00—not to allow under this instruction, however, an amount in excess of $100.00."

It will be observed that instruction No. 1 authorizes a finding for the defendant if the plant did not come up

to the warranty, regardless of the amount of damages to which defendant was entitled. In other words, the jury were compelled under this instruction, even though they believed defendant had been damaged only to the extent of $100.00 or $150.00, to disregard the balance of plaintiff's claim and render judgment for the defendant. It follows, therefore, that instruction No. 1 is erroneous.

The effect of instruction No. 2 is to assume that if the plant did not comply with the warranty it was worth less than $200.00. It seems to disregard entirely the fact that defendant was liable for $411.00, and that unless his damages exceeded this amount there should still be a finding in favor of plaintiff. In a case like this, the measure of damages is the difference between the value of the machinery as installed and its value as warranted. Marbury Lumber Company v. Stearns Mfg. Co., 107 S. W., 200.

Since the machinery is not absolutely worthless and was not returned or offered to be returned, defendant's defense is confined to his claim for damages. That being true, the court on another trial will instruct the jury in substance as follows:

1. You will find for plaintiff in the sum of $411.00, with 6 per cent. interest from July 14, 1914.

2. If you believe from the evidence that the engine in question, if kept in proper condition and properly operated, would not develop six horse-power, or power sufficient successfully and continuously to operate the plant with 150 Tungsten lamps of 16 and 8 candle power, and one arc lamp, you will find for the defendant and fix his damages as provided in instruction No. 3.

3. If you find for defendant under instruction No. 2, the measure of his damages is the difference between the value of the plant as warranted and its value as installed.

4. If you find for defendant and your finding be less than your finding for plaintiff, you will return a verdict in favor of plaintiff for the difference; but if your finding for defendant exceed or equal your finding for plaintiff, you will either return a verdict in favor of defendant for the excess not exceeding $200.00, or merely find for the defendant on the whole case.

Judgment reversed and cause remanded for a new trial consistent with this opinion.